UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DONALD E. HALTER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 1:20CV104 JAR |
| ) | |
| JASON LEWIS, ) | |
| ) | |
| Respondent. ) | |

## OPINION, MEMORANDUM AND ORDER

Petitioner Donald E. Halter filed a *pro se* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody raising four grounds for relief [ECF No. 1]. Respondent Jason Lewis filed a Response to the Court's Order to Show Cause in opposition to relief being granted [ECF No. 9]. The matter is therefore fully briefed and ready for disposition. Pursuant to Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts, this Court has determined that there are no issues asserted that give rise to a need for an evidentiary hearing, and therefore one is not warranted. For the reasons explained below, the Petition will be denied, and this action will be dismissed.

### Factual Background

Petitioner pleaded guilty in the St. Francois County Circuit Court, Missouri, to Medicaid fraud, obstruction of a Medicaid fraud investigation, two counts of financial exploitation of a disabled person, and three counts of tax fraud. He was sentenced to a seven-year term for the Medicaid fraud, a four-year term for obstruction of a Medicaid fraud investigation, a twenty-year term for each count of financial exploitation of a disabled person, and a three-year term for each count of tax fraud, all to be served concurrently, in the Missouri Department of Corrections.

Petitioner subsequently filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. The circuit court denied Petitioner's motion without an evidentiary hearing, and the Missouri Court of Appeal affirmed the denial.

The Missouri Court of Appeals summarized the relevant facts in its Opinion affirming the conviction and sentence:

### The Guilty Plea

Movant alleged in the amended motion that counsel "failed to advise [Movant] that he would not necessarily be placed on probation if he accepted the State's plea offer and pleaded guilty." Movant asserted that he was prejudiced by this because had he known he might be ordered to serve time in prison without having the opportunity for probation, he would not have pleaded guilty. He alleged his plea was involuntary "because he pleaded guilty without understanding that he would not necessarily be place on probation."

At the plea hearing, Movant stated that he understood the ranges of punishment on each count, which included imprisonment ranges of two to seven years, two to four years, two to five years and ten to thirty years or life. The court asked about the plea deal:

THE COURT: Has there been any plea bargaining, count bargaining, or other promises or deals worked in this case? If so, would you please state them for the record. What is the plea offer, sir?

THE STATE: Yes, the State has agreed to ask for a maximum of 20, we've capped it at 20 years.

THE COURT: And is it a 20 years free to argue, 20 years . . .

THE STATE: Twenty years free to argue.

THE COURT: Are we asking for an SAR?

DEFENSE COUNSEL: Yes.

THE STATE: We don't—we don't care, Your Honor . . .

THE COURT: You don't care.

THE STATE: . . . .it's up to defense, but if they're requesting one then they'll probably get one.

2

DEFENSE COUNSEL: Well, yeah, because I want to present information at the sentencing as well, so . . .

THE COURT: Okay, so 20 years, free to argue, and an SAR will be asked for.

THE STATE: Yes, Your Honor.

THE COURT: Okay. Is that your understanding of the plea agreement, sir?

DEFENSE COUNSEL: Yes, Your Honor.

THE COURT: [Movant], is that your understanding of the plea agreement?

MOVANT: Yes, ma'am.

Then the court addressed at length with Movant how the sentencing decision would be made:

THE COURT: Do you understand, sir, that obviously you're pleading to a lot of counts, and regardless how the sentences come down the State is going to argue to the Court that the Court sentence you to 20 years in the Department of Corrections? Do you understand that?

MOVANT: Yeah, I think so, yes.

THE COURT: Well, I have to make sure you clearly understand.

MOVANT: Yeah.

THE COURT: The way it . . .

MOVANT: I—I thought there was going to be some parole or something like that.

THE COURT: Well, let me explain to you . . .

DEFENSE COUNSEL: That's the free to argue.

THE COURT: . . . what's going to happen, and that way we can make sure you understand.

MOVANT: Yeah, well, that's—okay. It's to be argued, okay.

THE COURT: Hold on.

MOVANT: Yes, ma'am.

3

THE COURT: What's going to happen . . .

MOVANT: I got it

THE COURT: . . . is the Court—if the Court accepts all your pleas of guilty . . .

MOVANT: Right.

THE COURT: . . . then the Court is going to order what is called a sentencing assessment report [SAR]. And this report will be prepared, it will come back in about two months, and the Court will have a report, and the report is going to recommend either probation or recommend no probation or make a recommendation to the Court. Now regardless of what that report recommends, regardless of whether it recommends probation or whatever it recommends, the State has told you here today that when they come back for sentencing they will be asking for 20 years in the Department of Corrections. That's what they're going to argue to the Court. Do you understand that?

MOVANT: Okay. Okay.

THE COURT: Regardless of what the report recommends your attorney has the right to argue to the Court anywhere from 20 years, under 20 years. Do you understand that?

MOVANT: Yes, ma'am. I got it.

THE COURT: And again, it's going to be up to the Court . . .

MOVANT: Yes, ma'am.

THE COURT: . . . regardless—whatever occurs, the State is going to ask for 20, your attorney, I'm sure, is going to ask for less or something different.

MOVANT: Yes.

THE COURT: But at the end of the day it is the Court who decides what you get, and you could get 20 years in the Department of Corrections.

MOVANT: Yes, ma'am.

THE COURT: Do you understand that?

MOVANT: Yes, ma'am, I do. Yes.

The Sentencing Hearing

At the sentencing hearing, consistent with the plea agreement, the State asked for 20 years and defense counsel argued for probation, which was also the recommendation

4

in the SAR. The court announced it would sentence Movant to 20 years. Movant complained that he "didn't get" his plea bargain, telling the court he was supposed to get "five years probation, 20 year cap." The court pointed out that the record of the plea hearing would show that no one had promised him probation and that the court had made it clear to Movant the State was going to argue for 20 years and his counsel could argue for probation. Movant then said, apparently to counsel, "Is that not what I was told?" and counsel responded:

> Uh, I think—you know, I don't remember the exact details of how it was. We were told that we had everything from the possibility of arguing for probation all the way up to the State's cap of the 20 years.

Movant also claimed that the court had said to him as they were leaving the plea hearing that the "five years paper [sic] and 20 year cap" could change. Again the court reminded Movant that the court had made it clear at the plea hearing that it was going to order an SAR and regardless of what it recommended, the State had the right to argue for a 20-year term of imprisonment and his attorney could "argue anywhere from probation up to and possibly under 20 years." Movant retorted that the court had "said to go to the Probation Office." The court explained that was so they could prepare the SAR.

Competency

[M]ovant challenges the denial of the claims in his amended motion regarding counsel's failure to investigate whether Movant was competent to proceed with the plea, was not guilty by reason of insanity or had diminished capacity and counsel's failure to use those defenses to negotiate a more favorable plea agreement and a lesser sentence. All of these claims are based on allegations in the amended motion that, despite knowing of Movant's bipolar diagnosis, prescription for psychiatric medication and learning disability, counsel "did not secure the services of an expert in the field of forensic psychology to determine if [Movant]" met the requirements for the competency, NGRI and diminished capacity defenses. "Had counsel retained an expert in the field of forensic psychology," Movant alleged, "that expert would have been willing and available to testify that [Movant] lacked the capacity to understand the proceedings against him and assist in his own defense because he suffers from bipolar disorder and an intellectual delay (competency), was unable to appreciate the nature, quality or wrongfulness of his conduct at the time of the offenses (NGRI) and did not have the states of mind necessary to commit the charged offenses (diminished capacity). Movant alleged that he was prejudiced both because such testimony would establish these defenses and because had he known an expert would testify in that way, he would not have pled guilty.

He also alleged that counsel did not use the testimony of this unnamed expert as part of the bargaining process with the State for a more favorable plea deal and did not present such evidence at sentencing in support of his argument for probation. Movant alleged that "the expert's testimony and supporting documentation would have explained to the State and the court why [Movant] should have been placed on probation because it would have caused the court to understand how [Movant's] bipolar disorder and intellectual delay

5

caused him to be deserving of probation." Movant asserted that he had been unable to retain such an expert before filing the amended motion, but that post-conviction counsel "will produce" an unnamed expert in the field of forensic psychology to testify, as set forth above, at an evidentiary hearing.

Petitioner now raises four grounds for relief, alleging that (1) his plea was not knowing and voluntary in nature; (2) he was coerced to plead guilty; (3) his counsel promised that he would be sentenced to probation; and (4) counsel was ineffective for failing to investigate an insanity defense by requiring the Court to hold a competency hearing and calling a mental defect expert on his behalf.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA") applies to all petitions for habeas relief filed by state prisoners after the statute's effective date of April 24, 1996. When reviewing a claim that has been decided on the merits by a state court, AEDPA limits the scope of judicial review in a habeas proceeding as follows:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In construing AEDPA, the United States Supreme Court, in *Williams v. Taylor*, held that:

> Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts. Under the

6

'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. 362, 412–13 (2000).

Furthermore, the *Williams* Court held that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 409.

A state court decision must be left undisturbed unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, or the decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. *Colvin v. Taylor*, 324 F.3d 583, 586-87 (8th Cir. 2003).

A decision is contrary to United States Supreme Court precedent if it decides a case based on a different rule of law than the rule dictated by United States Supreme Court precedent, or it decides a case differently than the United States Supreme Court did on materially indistinguishable facts. *Id.* A decision may only be overturned, as an unreasonable application of clearly established United States Supreme Court precedent, if the decision is both wrong and an objectively unreasonable interpretation or application of United States Supreme Court precedent. *Id.* A federal habeas court may not disturb an objectively reasonable state court decision on a question of federal law even if the decision is, in the federal court's view, wrong under Eighth Circuit precedent, and even if the habeas court would have decided the case differently on a clean slate. *Id.* State court factual determinations are presumed to be correct and this presumption can only be rebutted by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

7

## Statute of Limitations

Congress provides a one-year window in which a habeas applicant can file a petition for writ of habeas corpus. That window opens at the conclusion of direct review. The window closes a year later. Failure to file within that one-year window requires the court to dismiss the petition for writ of habeas corpus. 28 U.S.C. §2244(d) (1) (A); *See Cross-Bey v. Gammon*, 322 F.3d 1012 (8th Cir.), *cert. denied*, 540 U.S. 971 (2003). If an inmate does not seek a writ of certiorari on direct review, direct review concludes when the time limit for seeking further review expires. *Gonzales v. Thaler*, 132 S. Ct. 641, 653-54 (2012). Under Missouri Supreme Court Rule 30.01, Rule 30.03, Rule 81.04, and Rule 81.08, the time limit for filing a notice of appeal is ten days after sentencing. Here, Petitioner timely filed his Petition.

## Ineffective Assistance of Counsel

Grounds One, Two and Three collectively raise an ineffective assistance of counsel claim. To prevail on his ineffective assistance of counsel claim, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). With respect to the first *Strickland* prong, there is a strong presumption that counsel's conduct fell within the wide range of professionally reasonable assistance. *Id.* at 689. Thus, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and the "burden to show that counsel's performance was deficient rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013) (quotation marks and citation omitted); *See also Strickland,* 466 U.S. at 689 (noting that a petitioner must show that the challenged action was not part of a sound trial strategy); *Abernathy v. Hobbs*, 748

8

F.3d 813, 816 (8th Cir. 2014) (explaining that reviewing courts must refrain "from engaging in hindsight or second-guessing of trial counsel's strategic decisions") (citation omitted)).

To establish "prejudice," the petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." *Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted). Although *Strickland* requires a showing of both deficient performance and prejudice, a "finding that no prejudice exists is sufficient to conclude that counsel was not constitutionally ineffective – [courts] need not make a determination regarding deficiency." *Holder v. United States*, 721 F.3d 979, 987 (8th Cir. 2013).

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)).

> First, under *Strickland*, the state court must take a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. *Strickland*, 466 U.S. 696. ... To satisfy *Strickland*, the likelihood of a different result must be "substantial, not just conceivable." *Id.* Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect. [*Harrington v. Richter*, 562 U.S. 86, 112, 101 (2011)]. This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at [102.]

*Williams*, 695 F.3d at 831-32. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105. In this context, a state

9

court's findings of fact made in the course of deciding a claim of ineffective assistance of counsel are presumed to be correct. *Odem v. Hopkins*, 382 F.3d 846, 849 (8th Cir. 2004).

## Procedural Default

As explained below, Ground Four is procedurally barred in this Court. To preserve a claim for federal habeas review, a state prisoner "must present that claim to the state court and allow that court an opportunity to address [his or her] claim." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim only "where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)).

To establish cause, the petitioner must show that "some objective factor external to the defense" prevented his compliance with a state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, "[t]he habeas petitioner must show 'not merely that the errors ...created a possibility of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

## Discussion

Review under 28 U.S.C. § 2254 is a review to determine whether a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Here, Petitioner states four grounds for relief.

### Grounds One, Two and Three – Ineffective Assistance of Counsel for Failure to Advise Sentence

Grounds One, Two and Three are closely related and will be analyzed together. Petitioner argues his plea was not knowing and voluntary in nature (Ground One) because his counsel coerced him to plead guilty (Ground Two) by promising that he would be sentenced to probation (Ground Three). The Court is construing these allegations liberally, assuming Petitioner is attempting to reassert his claim that he raised during his post-conviction proceedings that plea counsel was ineffective for failing to advise that he may not receive a sentence of probation if he pleaded guilty. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The Missouri Court of Appeals denied this claim on the merits, and such denial is entitled to deference by this Court. *Williams*, 695 F.3d at 831; 28 U.S.C. § 2254(d).

The motion court rejected this claim because the record conclusively refutes Petitioner's allegations, and the Missouri Court of Appeals agreed.

In reaching its conclusion, the Missouri Court of Appeals explained:

[It] was clear the Movant understood he could receive a prison sentence of 20 years, even though under the plea agreement, his lawyer was "free to argue" for a lesser sentence including probation. Contrary to Movant's argument on appeal, there is no indication that what Movant thought the court meant in the above exchange was that it would suspend execution of any term of imprisonment and place him on probation. In fact, at one point when the court mentioned "20 years in the Department of Corrections," Movant stated that he thought he was going to "get parole or something" indicating that he knew "20 years in the DOC" meant time in prison. Thereafter, it was clearly explained that probation was something counsel was free to argue—which Movant repeatedly said he understood—and there was no suggestion the court would suspend execution of his sentence and place him on probation. Clearly understanding that prison time was a

11

possibility and that probation was not guaranteed, Movant proceeded to plead guilty. This record directly and conclusively refutes the allegations that had Movant known he might be ordered to serve time in prison without having the opportunity for probation he would not have pled guilty and that he pled guilty without understanding that he would not necessarily be placed on probation.

The Missouri Appeals Court concluded this ineffective assistance of counsel claim was without merit:

> Despite this alleged confusion about the scope of the sentencing possibilities under the plea offer, Movant told the court immediately after this exchange that counsel was a "good lawyer" and he had no complaints about counsel. Movant said that he had sufficient time to talk with counsel before his plea, that counsel communicated no threats or promises to induct him to enter the plea and that he was satisfied with counsel's services. Movant assured the court of his satisfaction with counsel knowing that he had not gotten probation. That is, at that time, Movant did not blame his supposed misunderstanding of the plea agreement on counsel's supposed failure to ensure that he understood he might not necessarily get probation under that agreement. Thus, this record directly and conclusively refutes the allegation that counsel failed to ensure that Movant understood he might not necessarily get probation under the plea agreement.

In reviewing whether a state court's application of federal law was unreasonable, the district courts review the legal conclusion reached by the court, not merely its rationale. *Williams*, 695 F.3d at 831. Where there is no conspicuous misapplication of on-point Supreme Court precedent, the proper question is whether there is "any reasonable argument" that the state court's judgment is consistent with federal law. *Id.*

The Eight Circuit has held that "[w]hile a guilty plea taken in open court is not invulnerable to collateral attack in a post-conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Nguyen v. United States,* 114 F.3d 699, 703 (8th Cir. 1997) (internal citations and quotation marks omitted); *See also, United States v. Andis*, 333 F.3d 886, 889-92 (8th Cir. 2003) (en banc) (one important way the court can ensure plea agreement is voluntary is to question defendant about decision to enter into it). Further, inaccurate advice of counsel about the

12

"likely punishment does not render involuntary a defendant's decision to plead guilty, so long as the defendant is informed of the maximum possible sentence permitted by statute and the court's ability to sentence within that range." *United States v. Quiroga*, 554 F.3d 1150, 1155 (8th Cir. 2009); *See also, Hollis v. United States*, 687 F.2d 257, 260 (8th Cir. 1982) (where Defendant understands sentencing decision is solely within trial court's discretion and confirms that he understands the plea and that no promises were made beyond plea agreement, plea will not be set aside as involuntary); and *Greathouse v. United States*, 548 F.2d 225, 228 n.6 (8th Cir.), *cert. denied*, 434 U.S. 838 (1977) (guilty plea will not be set aside merely because he relied on his attorney's opinion that the sentence would be a lenient one).

Here, the Missouri Court of Appeals found the record supported that Petitioner understood: (i) that he could be sentenced to twenty years' imprisonment, which the court made clear to him three separate times; (ii) the ranges of punishments for the offenses to which he was pleading guilty; and (iii) the nature of the plea agreement. The record shows the court told him at his guilty plea hearing, "But at the end of the day it is the Court who decides what you get, and you could get 20 years in the Department of Corrections," then asked Petitioner if he understood to which he replied, "Yes, ma'am, I do. Yes." Petitioner also confirmed at his plea hearing that he had no complaints about his counsel and had sufficient time to talk with counsel before his plea, that counsel communicated no threats or promises to induce him to enter the plea and that he was satisfied with counsel's services. When he was sentenced to twenty years imprisonment and indicated he believed he would get probation, the record shows the court reminded him that he was not promised probation, and the State clearly indicated they would ask for twenty years at the plea hearing.

13

The Missouri Court of Appeals in reviewing the post-conviction motion denial considered Petitioner's allegations by reviewing the record thoroughly, and its conclusion that his own statements on the record directly contradict such allegations is neither an unreasonable interpretation nor contrary to clearly established federal law. Consequently, Grounds One, Two and Three must be denied.

### Ground Four – Ineffective Assistance of Counsel for Failure to Raise and Investigate an Insanity Defense

In Ground Four, Petitioner argues his counsel was ineffective for failing to investigate an insanity defense. He asserts his counsel should have required the Court to hold a competency hearing and called a mental defect expert on his behalf.

The Missouri Court of Appeals declined to address the merits of this claim because Petitioner did not satisfy the state procedural requirements for bringing such a claim:

> Here, movant has no witness to support his allegations. Movant simply states he has not had time to procure a witness, but if he did have time, what the witness would purportedly say. This does not meet requirements set forth herein. First, movant has had time to procure a witness, and has failed or elected not to do so.
>
> Movant's allegation of ineffective assistance of trial counsel stems from trial counsel's purported failure to locate and call to testify an expert witness who would be qualified to testify as to the [Petitioner's] mental status. However, movant does not plead that any of these alleged expert witnesses existed at the time of trial preparation or at the time of the plea, could have been located through reasonable investigation, or would have been willing and able to testify if called. This is insufficient to establish movant is entitled to a hearing on his claims. Movant also fails to allege what the expert witnesses' testimony would have been if called. Movant alleges only that the expert witnesses may have testified to the effects of these alleged mental deficiencies; however, movant does not claim the expert witness testimony would have been beneficial to his case other than it would allow other evidence to be admitted.

The motion court also found the assertions regarding the expert he would hire if an evidentiary hearing were granted were "conclusive allegations based on conjecture." The Missouri Court of Appeals found it must presume that the motion court's finding and conclusion is correct,

14

and Petitioner failed to meet its burden to demonstrate that it is clear error.

The Missouri Court of Appeals went on to note, *ex gratia*, that case law supports the motion court's decision because in order to hold an evidentiary hearing on counsel's failure to investigate, Petitioner must allege:

> [S]pecific information that counsel failed to discover, that a reasonable investigation by counsel would have disclosed that information and that the information would have aided the movant's defense. *See, e.g., State v. Clark*, 908 S.W.2d 764, 767–68 (Mo. App. W.D. 1995). No hearing is required without identifying the expert or the contents of the proposed testimony. *See id.* Conclusions, conjecture and speculation about what retaining an expert might have accomplished are insufficient. *See id; see also State v. McGuire*, 892 S.W.2d 381, 386 (Mo. App. E.D. 1995) (allegations regarding counsel's failure to secure testimony of expert consisted of "mere speculation" and did not warrant evidentiary hearing where movant "had not suggested or named an expert who would have testified on his behalf").

"It is well-settled that federal courts are precluded from reviewing 'a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Greer v. Minnesota*, 493 F.3d 952, 957 (8th Cir. 2007) (quoting *Coleman*, 501 U.S. at 729)). "The doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman*, 501 U.S. at 729-30. A "limited discussion of the substance of [Petitioner's] claim is insufficient to trigger review by this court" when the state court does not attempt to adjudicate the constitutional claim. *Greer*, 493 F.3d at 957. In such instances, like here, Petitioner "forfeits his right to present his federal claim through a federal habeas corpus petition, unless he can meet strict cause and prejudice or actual innocence standards." *Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004). The independent and adequate state ground doctrine is jurisdictional; thus, the Court must raise it even if a respondent does not. *Coleman*, 501 U.S. at 729.

15

Petitioner fails to demonstrate cause for his procedural default, and he cannot establish any prejudice for the failure from the alleged unconstitutional errors. Nor has he shown that a fundamental miscarriage of justice would occur if the Court does not review the merits of the claim. Petitioner has not presented any new evidence of actual innocence or shown that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Abdi*, 450 F.3d at 338. Consequently, Ground Four is procedurally defaulted.

## Conclusion

Petitioner seeks habeas relief from this Court after pleading guilty to Medicaid fraud, obstruction of a Medicaid fraud investigation, two counts of financial exploitation of a disabled person, and three counts of tax fraud by a Missouri state court. Petitioner brings four grounds for relief. Grounds One, Two, and Three all relate to an ineffective assistance of counsel claim. As to those grounds, Petitioner has not carried his heavy burden of demonstrating that counsel acted objectively unreasonably, that Petitioner suffered prejudice as a result, and the Missouri Court of Appeals unreasonably applied federal law or relied upon an unreasonable determination of the facts in denying the claims. Ground Four is procedurally defaulted because the state court decision rests on independent and adequate state procedural grounds, thus federal habeas review is barred. *See Coleman*, 501 U.S. at 730.

## Certificate of Appealability

When a district court issues an order under § 2254 adverse to the applicant it "must issue or deny a certificate of appealability." R. Governing Section 2254 Cases in the U.S. Dist. Cts., R. 11. If a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claims, the Court should issue a certificate of appealability if the prisoner has shown "that jurists of reason would find it debatable whether the petition states a

valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*; *See also, Khaimov v. Crist*, 297 F.3d 783, 786 (8th Cir. 2002) (interpreting *Slack* in the following manner: "1) if the claim is clearly procedurally defaulted, the certificate should not be issued; 2) even if the procedural default is not clear, if there is no merit to the substantive constitutional claims, the certificate should not be issued; but, 3) if the procedural default is not clear and the substantive constitutional claims are debatable among jurists of reason, the certificate should be granted").

For the reasons stated in this Opinion, the Court finds that the denial of Petitioner's claims is based on such a clear record and well-settled law that no reasonable jurists would debate that no constitutional right of Petitioner was denied. Therefore, no certificate of appealability will issue in this case.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Donald E. Halter's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [ECF No. 1] is **DENIED**, and this case is hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, this Court will not issue a certificate of appealability. See *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998).

A separate Judgment will accompany this Opinion, Memorandum and Order.

Dated this 16th day of August, 2023.

                                                          _____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE